Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
STIPULATIONS
1. That the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. That the parties have been correctly designated.
3. An employer-employee relationship existed on October 13, 1995 and/or October 20, 1995, the alleged original date of injury.
4. That the plaintiff had an average weekly wage of $402.71 yielding a compensation rate of $268.49.
5. Stipulated medical records were submitted on October 11, 1996 to be admitted as evidence.
***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
FINDINGS OF FADO
1. The plaintiff began working for defendant-employer in September 1993 as a metal worker. His job duties included various tasks involving the manufacture and installation of commercial furnaces.
2. On or about October 13, 1995, plaintiff suffered a low back injury while lifting a piece of metal during a furnace installation job in Anderson, South Carolina. Plaintiff did not have any low back pain or leg symptoms immediately prior to this injury. At said time, plaintiff suffered an injury by accident or specific traumatic incident arising out of and in the course of his employment with defendant-employer. Plaintiff informed Mike Jones, the safety director for defendant-employer on Monday, October 23, 1995, that he injured his back on the job in South Carolina.
3. Plaintiff sought medical treatment on October 23, 1995 at Prime Care where he was examined by Harold Hall, a physician's assistant. At the time of his examination, plaintiff was experiencing pain in his low back which radiated down the back of both legs to the mid-thigh. His gait was stiff, and he was only able to forward flex to the mid-knees. Extension at 20 degrees caused an increase in his pain, his deep tendon reflex was absent at the left ankle and he had a positive straight leg raise on the left side. Mr. Hall's initial diagnosis on October 23, 1995, was a lumbar-sacral strain and left leg radiculopathy.
4. Mr. Hall prescribed medication, scheduled a follow-up visit for October 26, 1995 and took plaintiff out of work through at least October 26, 1995. On October 24, 1995 following a discussion with his supervisor, plaintiff returned to Prime Care and requested to be released to return to work because he feared losing his job. Mr. Hall prescribed additional medication and released plaintiff to return to work on October 25, 1995. Plaintiff did not receive pay for October 24, 1995.
5. Although he continued to experience back pain, plaintiff was able to work from October 25, 1995 until the morning of November 10, 1995 when he met with John Bowman and was assigned work on a press-brake machine. The job involved setting up the machine and loading metal dies into the bottom and the top of the machine. While plaintiff was lifting a metal die to load the bottom of the machine, he felt a sharp pain in his lower back that went down the back of his legs. The pain was in the same location as the October injury but more intense. Plaintiff reported his injury immediately to Chris Dodd, a lead man who was working nearby. Plaintiff then asked Mr. Dodd to help him load a second die into the top of the machine.
6. Plaintiff also reported his injury to his supervisor, John Bowman, who noticed that after plaintiff returned from the press-brake machine, he appeared to be bent over. Plaintiff's time card for November 10, 1995, shows that Mr. Bowman made the following notation: "Hurt Back 11/10 J.B." Plaintiff was only paid for one-half the work day of November 10, 1995.
7. Plaintiff went to Kernersville Family Practice and saw Dr. Leo Record. Plaintiff told Dr. Record that he had injured his back on the job in October, that he returned to light duty work and that he was able to work until he loaded the die in the press-brake machine. Plaintiff also told Dr. Record about an incident over the weekend of October 28, 1995, during which he tilted a stove at home which aggravated his pain. Upon examination, plaintiff was experiencing pain in the left lower lumbar area, discomfort running down the back of both legs and a positive straight leg raise on the left side. Medications and light work were prescribed for one week.
8. Plaintiff continued to work until November 17, 1995 when he saw Dr. Wesley Phillips. Plaintiff presented with back pain. Crossing the left leg caused pain in the L5-S1 joint area, and he was only able to lean forward about 75 degrees. Plaintiff had a positive straight leg raise on the left leg and a decreased deep tendon reflex at the left knee. Dr. Phillips wrote plaintiff out of work on November 17, 1995, ordered a lumbar spine MRI and referred plaintiff to Dr. Taft at Salem Orthopaedic. Although Dr. Phillips gave plaintiff an excuse from work, plaintiff continued to work. Plaintiff was not paid for the November 17, 1995 work day.
9. An MRI scan was performed on November 18, 1995 which revealed a large left-sided disc herniation at the L5-S1 level of plaintiff's back. On November 20, 1995, plaintiff was evaluated by Dr. Taft for lower back and left leg pain. Upon physical examination, Dr. Taft found that the plaintiff had a positive straight leg raise on the left leg at 30 degrees. Deep tendon reflexes were recorded as normal and equal. Dr. Taft prescribed medications, continued light duty and indicated that plaintiff was a surgical candidate if his pain continued. Plaintiff was only paid for one-half of the November 20, 1995 work day.
10. Plaintiff's back pain continued to get worse until he was no longer able to work as of November 28, 1995. On December 11, 1995, plaintiff underwent a hemilaminectomy at the L5-S1 level on the left side. The surgery was performed by Dr. Taft. Said surgery was reasonably necessary to provide plaintiff relief from his ruptured disc and to lessen his period of disability.
11. Plaintiff's work-related injury on October 13, 1995 and subsequent work-related aggravation of the injury on November 10, 1995 caused plaintiff's disc herniation for which he received surgery.
12. As a result of the ruptured disc injury sustained on October 13, 1995 and subsequent aggravation of this condition on November 10, 1995, plaintiff was unable to earn his pre-injury wages on October 24, 1995, one-half of the November 10, 1995 workday, November 17, 1995, one-half of the November 20, 1995 workday and from November 28, 1995 through March 3, 1996. Plaintiff worked on light duty from March 4, 1996 through April 16, 1996; however, the evidence does not establish that plaintiff was paid less than his pre-injury wages during this period.
13. On April 17, 1996, plaintiff was released to return to his regular duties. As of April 29, 1996, plaintiff had reached maximum medical improvement and was assigned a ten percent (10%) permanent partial impairment rating to his back. Dr. Taft opined that since plaintiff has a disc space that is not normal, there is a potential in the future that plaintiff could have more problems with his back. At the time of the hearing, plaintiff continued to experience some back pain, but he had not sought further medical treatment or medication.
***********
The foregoing stipulations and findings of fact engender the following additional:
CONCLUSIONS OF LAW
1. On October 13, 1995, plaintiff sustained an injury to his back arising out of and in the course of his employment with defendant-employer as the direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. On November 10, 1995, plaintiff suffered an aggravation and acceleration of his original compensable injury which was a direct and natural result of the original compensable injury of October 13, 1995. N.C. Gen. Stat. § 97-2(6); Starr v. CharlottePaper Co., 8 N.C. App. 604, 175 S.E.2d 342 (1970).
3. As a result of his compensable injury on October 13, 1995 and subsequent work-related aggravation on November 10, 1995, plaintiff is entitled to temporary total disability compensation for three days between October 24, 1995 and November 20, 1995 and temporary total disability compensation from November 28, 1995 through March 3, 1996. N.C. Gen. Stat. § 97-29.
4. As a result of his compensable injury on October 13, 1995, plaintiff is entitled to permanent partial disability compensation for the ten percent (10%) permanent partial disability to his back. N.C. Gen. Stat. § 97-31.
5. As a direct and proximate result of plaintiff's work-related injury by accident on October 13, 1995 and subsequent aggravation on November 10, 1995, plaintiff sustained an injury to his back as a result of a specific traumatic incident of the work assigned, and requires further medical treatment and supplies. N.C. Gen. Stat. § 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation for three days between October 24, 1995 and November 20, 1995 and thereafter continuing from November 28, 1995 through March 3, 1996 at the rate of $268.49 per week. Said amount shall be paid in a lump sum, subject to the attorney fee approved below.
2. Defendants shall pay to plaintiff permanent partial disability compensation at the rate of $268.49 per week for thirty (30) weeks for plaintiff's ten percent (10%) permanent partial disability to his back. Said amount shall be paid in a lump sum, subject to the attorney's fee approved below.
3. Defendants shall pay all medical expenses resulting from plaintiff's compensable injury on October 13, 1995, including all future medical treatment designed to effect a cure, to provide relief or to lessen his period of disability.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under Paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the lump sum due plaintiff under Paragraph 1 and 2 of this AWARD shall be deducted from that sum and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs.
ORDER
In the discretion of the Full Commission,
It is HEREBY ORDERED that plaintiff's Motion to Dismiss alleging that defendants did not timely file their appeal is DENIED.
It is FURTHERED ORDERED that plaintiff's Motion for Interest on the Award from the date of hearing before the deputy commissioner under N.C. Gen. Stat. § 97-86.2 is GRANTED, and plaintiff's motion for attorney's fees as part of cost for defending this appeal to the Full Commission pursuant to N.C. Gen. Stat. § 97-88 is GRANTED. Defendants shall pay to plaintiff in addition to the attorney's fee under Award paragraph number four the amount of $1,200.00. This amount shall be paid directly to plaintiff's attorney.
 S/ _________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
BSB:jth