The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag and the briefs before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Commercial Union Insurance Company is the carrier on the risk.
4. The date of the alleged injury was 6 April 1994.
5. The average weekly wage of plaintiff at the time of the alleged injury was $198.80, yielding a compensation rate of $132.54.
6. The parties stipulated thirty-eight (38) pages of medical records into the record.
7. The issues to be resolved in this case are:
 a. Did plaintiff sustain a work-related injury to her back on 6 April 1994?
 b. Did plaintiff aggravate a pre-existing injury when she leaned over in the shower to shave her legs on 12 December 1994, or was the shower incident an intentional intervening cause?
 c. If so, is plaintiff entitled to temporary total disability benefits from 26 January until 23 May 1995?
 d. Is plaintiff entitled to temporary partial disability benefits from 23 May 1995 until 1 August 1995?
 e. Is plaintiff entitled to ongoing medical benefits from 6 April 1994?
***********
Based upon the findings of fact, the Full Commission concludes as follows:
FINDINGS OF FADO
1. Plaintiff is a female who was employed as a crew leader by defendant-employer in its Arby's fast food restaurant in Hendersonville on 6 April 1994. She had been so employed for three and one-half months.
2. As a crew leader, plaintiff had the responsibility of supervising three other employees during the night shift, which included being responsible for closing down the restaurant.
3. At approximately 5:30 p.m. on 6 April 1994, plaintiff, while lifting a pan of meat into an oven for roasting, felt a sharp and sudden pain in her lower back extending through her buttocks down into her right leg. Even though the pain was severe, plaintiff continued to work because she could not get a co-worker to relieve her and she was the supervising employee then present.
4. As plaintiff continued to help her other employees during the remainder of the shift, she twisted her back in the process of making sandwiches, causing her back to tighten up on her and become extremely painful and she could not continue. Employee relief arrived at approximately 10:00 p.m.
5. Plaintiff went immediately to Margaret R. Pardee Memorial Hospital emergency room where she reported her injury to Dr. P. Craig Weeke, the emergency room physician on duty at that time.
6. Dr. Weeke diagnosed plaintiff with a back strain, gave her prescriptions for Darvocet and Flexeril and released her to her own care. Plaintiff was also given a medical release to stay out of work for up to three days and to remain in bed. Even though plaintiff did not file a claim for her injury with the Industrial Commission at that time, defendants paid for her medical treatment at the hospital emergency room.
7. In spite of Dr. Weeke's orders which plaintiff provided to her employer, defendant-employer's supervisor called plaintiff after only twenty-four hours and ordered her to either return to work or be terminated.
8. Plaintiff, in an attempt to convince defendant-employer that bed rest had been ordered by her physician, took Dr. Weeke's work excuse to her place of business and again was informed that she must either return to work or be terminated. Plaintiff remained off work only two of the three days ordered by Dr. Weeke.
9. Plaintiff, having no other source of income, returned to work for defendant-employer. Upon returning to work, plaintiff continued to experience low back, buttock and right leg pain more frequently because of the requirements of her crew leader position.
10. Plaintiff made a formal request to defendant-employer to be removed as crew leader in a self-imposed effort to conform her work requirements to her physical limitations. Defendant-employer denied plaintiff's request to take a lighter job as a crew member and thus avoid the greater exertion required of a crew leader.
11. After defendant-employer's refusal to demote plaintiff at her request, plaintiff next requested that her hours be reduced so that she could lessen the exertional requirements of her job which continued to exacerbate her lower back condition. This request was refused. Plaintiff, finding she could not perform her job duties, gave written notice she would terminate her employment within two weeks. Instead of permitting plaintiff to work through her two week notice, defendant-employer terminated her.
12. Plaintiff, having no other income, applied for unemployment benefits but before benefits were awarded, plaintiff found a cashiers job at Bi-Lo which she thought she could perform within her physical limitations.
13. Plaintiff's back continued to be painful and the increased activity resulted in increased pain. Following her attempt to work as a cashier, plaintiff remained off work.
14. Plaintiff next attempted to work part-time at Taco Bell and found she could perform the requirements of that job only on a part-time basis.
15. Plaintiff attempted to return to full time work at Kentucky Fried Chicken at what she expected to be a very light job, but after working for a period of time, found her back pain increasing.
16. Some months later, on 12 December 1994, plaintiff presented to the emergency room at Margaret R. Pardee Memorial Hospital indicating that she had been shaving her legs, bent over in the shower, and felt the onset of severe low back pain.
17. The emergency room physician prescribed Vicodin and referred plaintiff to Dr. James Caserio, an internist in Hendersonville. A DO scan taken soon thereafter indicated the possibility of a disc bulge at L4-5 so Dr. Cesario referred plaintiff to Dr. Frank Brown, an orthopaedic surgeon in Hendersonville.
18. Dr. Brown examined plaintiff on 26 January 1995. On that visit plaintiff related a history of having continued back pain since her work-related injury of 6 April 1994.
19. Dr. Brown reviewed the DO scan. There was evidence of a possible disc herniation at L4-5. Dr. Brown excused plaintiff from work for thirty days. She underwent a course of epidural steroid injections, but her symptoms did not resolve. An MRI was taken on 24 February 1995 which did not reveal any definite nerve root compression.
20. Dr. Brown referred plaintiff to Dr. Charles Shields, a pain management specialist in Hendersonville. Dr. Shields began plaintiff on a course of physical therapy, prescribed medications and also instructed plaintiff in home stretching and relaxation techniques. Dr. Shields released plaintiff to return to work with restrictions on 26 April 1995.
21. Plaintiff's back pain and sciatica in January 1995 were causally related to her injury of 6 April 1994.
22. Dr. Shields referred plaintiff to Pisgah Physical Therapy for a course of physical therapy.
23. At plaintiff's request, Dr. Shields released her to return to work part-time on 26 April 1995 with no heavy lifting and no lifting at all to exceed fifteen to twenty pounds (15-20 lbs.). In addition, plaintiff was to alternate frequently between standing and sitting.
24. Following plaintiff's release to return to work she found a part-time job on 23 May 1995 at the Pizza Hut in Hendersonville, working between eighteen and twenty-five hours per week which continued until July 1995, following which her hours were increased to twenty-five to thirty hours per week until October 1995 at which time she returned to work full time.
25. Plaintiff's low back pain continues but she is working full time at a wage greater than she was making with defendant-employer and now manages a Little Caesar's Restaurant in Hendersonville.
26. Plaintiff was unable to work and was held out of work on 7 April and 8 April 1994 and between the dates of 26 January and 22 May 1995, a total of 16 5/7 weeks.
27. On 23 May 1995 through July 1995, plaintiff worked an average of 21.5 hours per week, averaging wages of $106.80 per week. Beginning on 1 August 1995 through October 1995 plaintiff worked an average of 27.5 hours per week, all part-time work at a wage equal to her pre-injury wage.
28. Plaintiff has not been given a permanent partial impairment rating.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury to her back on 6 April 1994. N.C. Gen. Stat. § 97-2(6). Fish v. Steelcase, Inc.,116 N.C. App. 703, 449 S.E.2d 233 (1994).
2. An exacerbation of plaintiff's compensable injury is likewise compensable if the exacerbating incident is a natural consequence that flows from the compensable injury. Starr v.Paper Co., 8 N.C. App. 604, 175 S.E.2d 342, cert. denied, 277 N.C. 112
(1970). An exacerbation of a compensable injury does not have to occur on the job. Heatherly v. Montgomery Components, Inc.,71 N.C. App. 377, 232 S.E.2d 29 (1984). Plaintiff's injury to her back of 6 April 1994 made her more susceptible to aggravation or re-injury in the same place. Thus, the injury of January 1995 was the direct result of the injury of 6 April 1994 and was not as the result of an independent cause attributable to plaintiff's own intentional conduct. Horne v. Universal Leaf Tobacco Processors,119 N.C. App. 682, 459 S.E.2d 797 (1995).
3. Plaintiff is entitled to temporary total disability benefits for a period of 16 5/7 weeks from 7 and 8 April 1994 and between the dates of 26 January and 22 May 1995 at the rate of $132.54 per week. N.C. Gen. Stat. § 97-29.
4. An injured employee who is capable of some work is entitled to partial disability benefits. N.C. Gen. Stat. § 97-30;Franklin v. Broyhill Furniture Industries, 123 N.C. App. 200,472 S.E.2d 382 (1996). From 23 May 1995 through July 1995, plaintiff worked an average of 21.5 hours per week, averaging wages of $106.80 per week. Beginning on 1 August 1995 through September 1995 plaintiff worked an average of 27.5 hours per week, all part-time work at a wage equal to her pre-injury wage.
5. Plaintiff is entitled to medical benefits arising from her injury by accident which tends to effect a cure, give relief, or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the rate of $132.54 for 16 5/7 weeks, subject to reasonable attorney's fees.
2. Defendants shall pay temporary partial benefits to plaintiff computed at the differential between plaintiff's compensation rate of $132.54 and 2/3 of her actual pay of $106.80 beginning 23 May and extending through July 1995. During that time she worked an average of 21.5 hours per week. Beginning again on 1 August through September 1995, defendants shall pay plaintiff temporary partial benefits computed at plaintiff's pre-injury compensation rate of $132.54. During that time, plaintiff worked an average of 27.5 hours per week.
3. Defendants shall pay all approved medical expenses incurred by or to be incurred by plaintiff as a result of said injury by plaintiff.
4. An attorney's fee in the amount of twenty five percent (25%) of the compensation awarded herein is approved for plaintiff's counsel, which shall be computed based upon the accrued but unpaid benefits due plaintiff and to be paid by defendant-employer for both temporary total and temporary partial disability. This amount shall be deducted from the amount due plaintiff and paid directly to plaintiff's counsel.
5. Defendants shall pay the costs.
 S/ _________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ ______________________ J. HOWARD BUNN JR., CHAIRMAN
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
LKM/bjp