LESLIE T. STARR, JR., EMPLOYEE, v. CHARLOTTE PAPER COMPANY, INC., EMPLOYER AND CONTINENTAL CASUALTY COMPANY, CARRIER

No. 7026IC374

(Filed 15 July 1970)

**1. Master and Servant § 94— findings by Industrial Commission — sufficiency**

The Industrial Commission is not required to make a finding as to each fact presented by the evidence.

**2. Master and Servant § 56— workmen's compensation — injury causing paralysis of legs — subsequent injuries from burns — proximate cause**

The Industrial Commission did not err in its conclusion that plaintiff's compensable spinal injury which caused permanent paralysis of his legs was a proximate cause of burns received by plaintiff on the lower portions of his body when a cigarette he had been smoking set the clothing on his bed on fire, where there was ample evidence to support the Commission's findings that the original injury caused a spasm in the muscles of plaintiff's legs, causing him to put his cigarette in an ash tray on his wheelchair beside his bed while he straightened his legs so the muscle spasm would relax, and that plaintiff suffered the burns because of a loss of feeling and sensitivity in the lower portions of his body as a result of the original compensable accident, the act of leaving the cigarette where it could set fire to the bed clothing being insufficient to break the chain of causation between the original injury and the burns sustained.

**3. Master and Servant §§ 56, 66— workmen's compensation — original compensable injury — subsequent injury at home — proximate cause**

While plaintiff's original compensable injury must be one of the direct and natural causes of a subsequent injury suffered in plaintiff's home in order for plaintiff to recover under the Compensation Act for hospital and medical expenses incurred in the treatment of the subsequent injury, the original injury need not be the sole cause of the second injury.

**4. Master and Servant § 58— workmen's compensation — negligence by injured employee**

Acts of negligence of the employee do not bar compensation for an original injury arising out of and in the course of employment.

**5. Master and Servant §§ 56, 58— workmen's compensation — injury subsequent to compensable injury — proximate cause**

An injury subsequent to a compensable injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of the compensable primary injury, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct.

**6. Master and Servant §§ 56, 58— workmen's compensation — burns suffered subsequent to compensable injury — smoking in bed — proximate cause — intervening cause**

Burns suffered by plaintiff when the clothing of his bed caught fire were the direct and natural results flowing from a compensable injury which had rendered plaintiff a paraplegic, and the conduct of plaintiff in smoking in bed was not such an independent intervening cause attributable to plaintiff's "intentional conduct" as to defeat recovery for medical and hospital expenses incurred in treatment of the burns.

APPEAL by defendants from an opinion and award of the North Carolina Industrial Commission (Commission) filed 18 February 1970.

On 7 July 1969 plaintiff filed a claim against the defendants for payment of all hospital and medical expenses incurred by him for the treatment of burns allegedly received by him on 17 March 1969. This claim was asserted under an order of the Commission filed 2 June 1965 approving a compromise settlement agreement (agreement) between the parties dated 27 May 1965.

The agreement set forth, among other things, that the plaintiff herein was an employee of the Charlotte Paper Company, Inc., who was subject to the provisions of the workmen's Compensation Act (Act) and whose insurance carrier was the Continental Casualty Company; that plaintiff employee suffered a compensable injury (original injury) on 8 October 1963 when he lost control of the automobile which he was driving in the course of his employment for the employer and suffered a spinal injury which resulted in the employee's being paralyzed in both legs and sustaining a loss of bladder and bowel control; that the sum of $35,000 was to be paid plaintiff, as a compromise, in full settlement of his right to weekly compensation benefits; with the exception, however, that such lump sum payment was not in satisfaction of reasonable and necessary nursing services, medicine, sick travel, medical, hospital and other treatment or care during the life of the plaintiff as required under the provisions of the Act and as required by the Act in cases in which

total and permanent disability results from paralysis resulting from an injury to the spinal cord. G.S. 97-29; G.S. 97-41.

By order filed 2 June 1965, the Commission approved the lump sum payment and in the award ordered:

"Defendant shall pay all medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto, during the entire life of the said plaintiff, when bills for same have been submitted to and approved by the North Carolina Industrial Commission."

A hearing was held on the claim of plaintiff filed 7 July 1969 by Deputy Commissioner Leake of the Commission after the defendants denied that the medical expenses of plaintiff resulting from the fire on 17 March 1969 were covered by the order filed 2 June 1965.

On 5 December 1969 the hearing commissioner filed an opinion and award ordering defendants to "pay all hospital and medical expenses incurred by the plaintiff as a result of the burns suffered by him on March 17, 1969." Upon appeal to the Commission, the Full Commission adopted as its own the findings of fact, conclusions of law and award filed in this case on 5 December 1969 by the hearing commissioner.

The defendants appealed to the Court of Appeals.

*Hubert E. Olive, Jr., for plaintiff appellee.*

*Kennedy, Covington, Lobdell & Hickman by Edgar Love, III, for defendants appellants.*

MALLARD, C.J.

The evidence for the plaintiff tended to show, except where quoted, that after the accident of 8 October 1963, and continuously since that time, he was paralyzed from the tenth vertebra down. On 17 March 1969 he could not walk because of the original injury and used a wheelchair. He lived with his parents in Charlotte. Plaintiff testified:

"* * * After the accident, I was paralyzed from the tenth vertebra down and had no sensation whatsoever.

That condition was the result of the accident on October 8, 1963, and has not changed since that time. Since then I have had no feeling whatsoever in my legs and lower abdomen. Feeling or sensitivity stops right around the navel.

* * * I have a room of my own there in the home. It has

twin beds in it and mine is against the wall. I put the wheelchair beside it and get in bed. There is a nightstand there. I had a sheet and blanket on my single bed and I had to put pillows between my legs because I have right many muscle spasms. I sleep on a sheepskin pelt which I lay on and which comes right about my navel on down.

I woke up about 3:30 that night. My father had been ill and he had been sick that night and I called mother to get me some water. I lit a cigarette and put it in the ash tray in the wheelchair. I had a muscle spasm and pulled my covers down, back, and straightened my legs and pillows back, and covers.

I don't remember anything after that except coming to when the smoke woke me up.

Muscle spasm is contracture, legs jump around, kick around. I have no control over this. When I had the muscle spasm, I pulled the sheet and blanket back.

My wheelchair was beside the bed at that time. The ash tray was in the wheelchair and the bed was a little over a foot from the wheelchair.

To help the muscle spasm in my legs, I moved it around and straightened the pillows and pulled the covers back up. The pillows are the ones I had between my legs.

The next thing I remember was smoke. After I smelled it, I realized there was fire and I reached down and tried to find it and called my mother.

\*      \*      \*

I was semi-conscious.

I was burned on my left leg, on my abdomen, on the right ankle below my navel. Before I smelled the smoke I did not feel a thing. Even in the hospital I did not feel any pain.

I was in the hospital for 73 days, my attending physicians being Dr. Chaplain, Dr. Walker, Dr. Berkeley, and Dr. Jett. The treatment I had was skin grafts on my left leg and lower abdomen. I had five of them."

The plaintiff's mother testified that at about 3:30 a.m. on 17 March 1969 she took him some water; that a little before 6:00 the plaintiff called to her; she smelled smoke; she went into her son's room and saw smoke over the foot of his bed; there was no flame; "the covers was just smoldered and burned"; and he had received burns and his legs were black and crusty looking.

There is medical evidence that on 19 December 1963 a physical examination of the plaintiff revealed:

> "Absence of voluntary motion of legs. The lower extremities are flaccid, are flexic, and there is total anesthesia below the 10th dorsal dermatome."

There is additional medical evidence that on 9 September 1964 "(t)his man has permanent, very extensive physical disability as a result of a fracture-dislocation in the low dorsal spine region, leaving him extensive paralysis of the legs, bowel, and bladder."

There is also medical evidence tending to show that on 17 March 1969 the plaintiff suffered second and third degree burns to the lower portions of his body.

Defendants' first three assignments of error relate to the failure of the hearing commissioner to find that the plaintiff (1) did not turn the light on in his room while smoking a cigarette, (2) went to sleep in a darkened room leaving a half-smoked cigarette burning in an ash tray in a wheelchair less than a foot from his bed, and (3) that plaintiff went to sleep without putting out the cigarette he had been smoking or returning the ash tray to the night stand or checking to see if his bed clothes had come in contact with the burning cigarette.

[1]  The Commission is not required to make a finding as to each fact presented by the evidence. *Guest v. Iron & Metal Co.,* 241 N.C. 448, 85 S.E. 2d 596 (1955); *Morgan v. Furniture Industries, Inc.,* 2 N.C. App. 126, 162 S.E. 2d 619 (1968). The facts mentioned in appellants' first three assignments of error are not material in this case. The failure to so find was not prejudicial error. *Thomason v. Cab Co.,* 235 N.C. 602, 70 S.E. 2d 706 (1952).

[2]  In assignments of error four and five, appellants assert that the hearing commissioner and the Commission committed error in finding that (1) "(t)he plaintiff's physical condition which resulted from the injury received in the accident of October 8, 1963, constituted a proximate cause of the injury and burns which occurred on March 17, 1969," and (2) "the fact that plaintiff had no feeling in the lower extremities and had muscle spasms of the leg and had to have his wheelchair against the bed constituted proximate cause of the burns received."

Neither of these two assignments of error fully set forth the findings of the hearing commissioner. What the hearing commissioner found with respect to these two assignments of error was as follows:

"The plaintiff's physical condition which resulted from the injury received in the accident of October 8, 1963, constituted a proximate cause of the injury and burns which occurred on March 17, 1969. Due to the earlier injuries the plaintiff had no feeling in his lower extremities and had muscle spasms of the legs. The muscle spasms made it necessary for him to turn back the covers, massage his legs, and cover himself again. His condition also made it necessary for him to have his wheelchair against the bed. These factors constituted proximate causes of the burns received. Also, the paralysis resulting from the previous injury kept the plaintiff from realizing that he was being burned over the areas heretofore described."

In the case of *Petty v. Transport, Inc.*, 276 N.C. 417, 173 S.E. 2d 321 (1970), the Court said that the Act should not be given a "technical, narrow and strict construction."

In the case of *Lawrence v. Mill*, 265 N.C. 329, 144 S.E. 2d 3 (1965), the Supreme Court said:

"In compensation cases the Commission finds the facts. If the findings have evidentiary support in the record, they are conclusive. However, the question whether the evidence is sufficient to support the findings is one of law to be determined by the courts. The Legislature has provided that the Workmen's Compensation Act shall be liberally construed but it does not permit either the Commission or the courts to hurry evidence beyond the speed which its own force generates."

In the case before us there was ample evidence for the Commission to find that the plaintiff suffered second and third degree burns on portions of his body because of a loss of feeling and sensitivity therein as a result of the original accident. It is clear from the evidence in this case that if the plaintiff had had normal feeling and sensitivity in the lower portions of his body, he could not have slept, to be awakened later by smoke, while the fire smoldered in his bed, "charred" his legs until they were "black and crusty looking," and caused second and third degree burns of the right lower abdomen, scrotum, penis, left thigh and left knee. The evidence tended to show that this lack of feeling and sensitivity resulted from the original injury. The seriousness of the burns was caused by the inability of the plaintiff to feel the burning. Moreover, the evidence tended to show that the original injury caused the spasm in the muscles of his legs, and this caused him to put his cigarette in the ash tray on his wheelchair while he was "straightening his legs" so that the muscle spasm would relax. Leaving the cigarette there where it could, if it

did, set fire to the bed clothing was a simple act of forgetfulness on the part of the plaintiff which was insufficient to break the chain of causation between the original injury and the burns sustained.

In the case of *Vause v. Equipment Co.,* 233 N.C. 88, 63 S.E. 2d 173 (1951), the Supreme Court said:

"* * * (I)t must be borne in mind that the Act was never intended to provide the equivalent of general accident or health insurance.

Hence, the fundamental fairness and logic of the requirement that to be compensable an injury must arise 'out of' the employment, *i.e.,* must in some reasonable sense spring from and be traceable to the employment. Accordingly, 'where an injury cannot fairly be traced to the employment as a contributing proximate cause . . . it does not arise out of the employment.' *Bryan v. T. A. Loving Co.,* 222 N.C. 724, 24 S.E. 2d 751, and cases cited.

The hazards of employment do not have to set in motion the sole causative force of an injury in order to make it compensable. By the weight of authority it is held that where a workman by reason of constitutional infirmities is predisposed to sustain injuries while engaged in labor, nevertheless the leniency and humanity of the law permit him to recover compensation if the physical aspects of the employment contribute in some reasonable degree to bring about or intensify the condition which renders him susceptible to such accident and consequent injury. But in such case 'the employment must have some definite, discernible relation to the accident.' *Cox v. Kansas City Refining Co., supra.* See also 58 Am. Jur., Workmen's Compensation, Section 247.

*          *          *

While there must be some causal connection between the employment and the injury, nevertheless it is sufficient if the injury is one which, after the event, may be seen to have had its origin in the employment, *and it need not be shown that it is one which should have been foreseen* or expected." (Emphasis Added.)

**[3]**    There is a distinction between the proximate cause doctrine in workmen's compensation cases and that applied in cases of tort. The proximate cause doctrine in this case requires that the original injury be one of the direct and natural causes of the subsequent injury. It is not necessary, however, in order that this plaintiff recover

hospital and medical expenses, that the original injury be the sole cause of the second injury. *Vause v. Equipment Co., supra;* Larson's Workmen's Compensation Law, § 13.11.

Defendants, in their assignment of error nine, contend that the Commission committed error in failing to find that the burns received by plaintiff on 17 March 1969 were caused by his own negligent misconduct. We do not .agree.

[4] Acts of negligence of the employee do not bar compensation for an original injury arising out of and in the course of employment. *Howell v. Fuel Co.,* 226 N.C. 730, 40 S.E. 2d 197 (1946).

In the case of *State Compensation Ins. Fund v. Industrial Acc. Com'n.,* 1 Cal. Rptr. 73 (1959), the District Court of Appeal, First District, Division 1, California, said:

> "Moreover, the employee's negligence actually is as irrelevant in the second injury as it admittedly is in the first. The fact that the workman suffers a secondary consequence of the first injury should not work a mystic change in the nature of the applicable test. * * *"

In this California case the court seems to hold that no intervening cause can break the chain of causation unless the original injury contributes nothing whatever to the final result.

In Larson's Workmen's Compensation Law, § 13.11, this holding of the California court is disapproved, and in doing so, it is there said:

> "On the other hand, most courts, in the search for a simple formula, have gone too far in the other direction when they have announced a general rule that the chain of causation between the original injury and the later consequences is broken by the claimant's negligence. * * *"

[5] Under the topic "RANGE OF COMPENSABLE CONSEQUENCES" in Larson's Workmen's Compensation Law, § 13.00, the general rule is stated:

> "When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct."

Also in Larson's Workmen's Compensation Law, § 13.11, it is said:

"The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury."

**[6]** We think that the second and third degree burns suffered by plaintiff were the direct and natural results flowing from the original injury. The conduct of the plaintiff, a paraplegic, in smoking in bed was not such an independent intervening cause attributable to plaintiff's "intentional conduct" as to defeat recovery in this case.

Defendants, in their assignments of error six, seven and eight, contend that the Commission erred in concluding that the plaintiff is entitled to recover of the defendants all hospital and medical expenses incurred by the plaintiff as a result of the burns suffered by him on 17 March 1969. We do not agree.

The material facts found by the Commission are supported by the competent evidence. When the Act is liberally construed, as we are required to do, we are of the opinion and so hold that the Commission correctly held that the burns accidentally sustained by plaintiff on 17 March 1969 are a consequent of the original injury, and the opinion and award of the Commission ought to be and is affirmed.

Affirmed.

PARKER and HEDRICK, JJ., concur.