The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings at the hearing on 4 February 1997 and the briefs and oral arguments on appeal. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, including the documents submitted on 12 June 1998, or to amend the prior Opinion and Award.
 ************* EVIDENTIARY RULINGS
Before the Deputy Commissioner, defendants' submitted a motion to strike medical records and other documents submitted by plaintiff and a motion for an Independent Medical Evaluation. These motions were properly DENIED by the Deputy Commissioner.
 *************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 4 February 1997 as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and are subject to and bound by the provisions of the Workers' Compensation Act. The Industrial Commission has jurisdiction over the parties and the subject matter. An employer-employee relationship existed between plaintiff and defendant-employer and Liberty Mutual was the carrier on the risk at all pertinent times hereto.
2. All parties have been correctly designated, and there is no question as to misjoinder of the parties.
3. Plaintiff sustained a compensable injury to her neck on 30 September 1996.
4. Plaintiff reported an injury to her employer.
5. Plaintiff's average weekly wage at the time of her injury was $289.90.
6. The issues before the Commission are (1) whether plaintiff's head tremors are causally related to her compensable injury; and (2) whether plaintiff is disabled as a result of her work injury?
 *************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. Plaintiff is a female, born 3 December 1956, with four children.
2. On 30 September 1995, plaintiff sustained an admittedly compensable injury to her back and neck while acting in the course of her employment with defendant-employer Brian Center.
3. Plaintiff reported the injury to her supervisor, and on 3 October 1995 presented to Dr. David Trott with complaints of acute neck strain and inflammation resulting from the injury. Plaintiff was given a neck brace and released to return to work. In subsequent visits to Dr. Trott on 9 October 1995 and 16 October 1995, plaintiff was instructed to continue to wear the neck brace, and was released to continue working with the sole restriction that she obtain assistance for patient transfers.
4. On 9 October 1995, Dr. Trott referred plaintiff to chiropractor, Dr. Steven Westin. On 10 October 1995, plaintiff presented to Dr. Westin and was unable to turn her head to the right. Dr. Westin performed a neck manipulation on plaintiff, forcibly rotating plaintiff's head. Within a few days after being treated by Dr. Westin, plaintiff began to develop head tremors.
5. Thereafter, plaintiff quit working for defendant-employer for reasons unrelated to her injury, and went to work for Interim Health Care. She remained in their employ until May 1996, again leaving for reasons unrelated to her work injury of 30 September 1995. Plaintiff went to work in telephone ordering for the J. Crew catalogue from October 1996 until December 1996, when she was laid off after the Christmas season. Plaintiff has not worked since that time.
6. Plaintiff has had numerous additional injuries to her neck, including at least two car accidents. In November 1993, plaintiff was hit from behind, resulting in neck soreness for a few weeks and requiring that she wear a soft collar. On 4 December 1996, plaintiff was stopped at a traffic light when a car hit her from behind. Plaintiff suffered whiplash and a sprain to her right lower back. In addition to the car accidents, plaintiff suffered a number of instances of spousal abuse, including an attempt by her former husband to strangle her. In January 1995, plaintiff was attacked by a patient at the Brian Center who tried to strangle her.
7. Between November 1995 and the date of the hearing on 4 February 1997, plaintiff's head tremors continued to worsen, causing her great difficulty in obtaining and maintaining employment. During this time she has been seen by at least seventeen doctors, has had multiple x-rays, and two MRI exams. There is no medical explanation offered for plaintiff's continuing head tremors, and no medical evidence tends to relate her head tremors to her compensable injury of 30 September 1995.
 *************
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The North Carolina Industrial Commission has jurisdiction over the parties and the subject matter of this action. N.C. Gen. Stat. § 97-2(l).
2. In order for plaintiff's current medical condition to render her eligible to receive compensation under the Act, she must present evidence which shows that the subsequent condition or injury is a direct and natural result of the compensable primary injury. Starr v. Charlotte Paper Co., 8 N.C. App. 604,175 S.E.2d 342 (1970).
3. Plaintiff has failed to demonstrate that her current condition and inability to work are the direct and natural results of her compensable injury of 30 September 1995, and therefore, is not entitled to medical treatment or compensation under the Act.Id.; N.C. Gen. Stat. § 97-2(6).
 *************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Under the law, plaintiff's claim in this case must be, and is hereby, DENIED.
2. The parties shall split the cost of this action.
 S/ ________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________________ DIANNE C. SELLERS COMMISSIONER