Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act, the defendant-employer regularly employing three or more employees at all times pertinent hereto.
2. The employer-employee relationship existed between plaintiff-employee and defendant-employer.
3. The defendant-employer was insured by CNA Insurance Company, which is the carrier on the risk in this claim.
4. The average weekly wage was $302.00 yielding a weekly compensation rate of $201.34.
5. The date of the compensable injury was June 15, 1996.
6. The parties agreed to stipulate the plaintiffs medical records.
7. The depositions of Dr. Robert S. Humble, Dr. W. Scott James and Dr. John W. Noble, Jr. were taken and has been received into the record.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff was born on October 25, 1948. At the time of the hearing before the Deputy Commissioner, plaintiff was 49 years of age. She is a high school graduate.
2. Plaintiff was first employed by the defendant Cato Corporation on August 12, 1991.
3. Plaintiff was employed in various positions at defendant-employer including "flat wear processor, "flat wear ticketer, "hanging wear ticketer assorter and "hanging wear counter.
4. At her hearing before the Deputy Commissioner, plaintiff submitted a detailed job description that described her various positions from August 1991 until she left work on June 7, 1997.
5. Plaintiff worked largely without incident for defendant-employer until June 15, 1996. On that date, she fell at work, fracturing her left patella. Plaintiffs injury was accepted by defendant-employer as a compensable workers compensation claim. Defendant-employer filed a Form 60 and subsequently paid benefits including temporary total benefits and medical expenses.
6. Plaintiff was initially treated at Pro Med South by Dr. Callaway. Dr. Callaway treated plaintiff conservatively until August 6, 1996. An MRI performed on August 8, 1996, indicated that plaintiff had a non-displaced mid patella fracture, marrow hemorrhage distal fragment with small amount of edema or ecchymosis surrounding the patella tendon. Plaintiff was subsequently referred to Dr. Robert Humble, who began treating her on August 12, 1996. Dr. Humble referred plaintiff to physical therapy, but plaintiffs knee remained painful. After further medical treatment including steroid injections, Dr. Humble performed an arthroscopic evaluation on December 26, 1996, at which time he determined there was plica and internal derangement of plaintiffs knee.
7. Dr. Humble wrote plaintiff back into light duty work on January 6, 1997, with significant restrictions including sitting down for four hours a day. Plaintiff received further physical therapy through the Rehabilitation Center. Dr. Humbles notes throughout the months of January and February 1997 are replete with plaintiffs complaints of continued pain. The physical therapy notes in March of 1997 note that plaintiff was unable to tolerate physical therapy due to severe pain and Dr. Humbles note on March 6, 1997 indicates that plaintiff had regressed and her condition had worsened.
8. Plaintiff was seen by Dr. Jackson at Carolinas Medical Group on March 19, 1997. Dr. Jackson noted that plaintiffs left knee had been giving her significant pain for approximately the previous 10 months.
9. On April 8, 1997, Dr. Humble performed an arthroscopy and chondroplasty of left knee of the patellofemoral joint. Dr. Humble noted a large articular flap under the patella beneath her old fracture. He referred plaintiff to further physical therapy but noted that "she will have to learn to live with the grinding and popping and some crepitation.
10. On May 1, 1997, Dr. Humble noted that plaintiff will always have a patellofemoral grind due to injury and wrote her back into light duty work. Dr. Humble released plaintiff on July 10, 1997, at maximum medical improvement with an 18% permanent functional impairment to her knee. Dr. Humble gave plaintiff significant permanent restrictions including avoiding repetitive climbing steps, no lifting over 30 to 40 pounds, and no jobs that required standing and walking to a maximum of six hours a day total, the remainder of the day to be in a sitting position. Dr. Humble noted that plaintiff still suffered from pain and discomfort and crepitation which he noted "was appropriate.
11. Plaintiff resigned from her job on June 7, 1997, while on light duty. However, she made no claim for further workers compensation benefits until after her fall in November 1997.
12. At the hearing before the Deputy Commissioner, plaintiff testified that she continued to have significant problems with pain and stability in her left knee. She testified that her knee gave away on numerous occasions causing her to lose her balance after she quit her job on June 7, 1997. However, she sought no further medical treatment during this period.
13. The plaintiffs husband, Melvin Presnell, also testified that his wife had significant problems with pain and stability in her left knee after Dr. Humble released her in July of 1997. Notwithstanding these problems, plaintiff sought no medical treatment.
14. On November 30, 1997, plaintiff was walking at church when she fell and re-injured her left knee. There are questions surrounding the fall. One medical report states, "she was walking when she apparently fell. Another medical note states, "patient slipped and fell backward. The Commission finds that plaintiffs knee gave way as a result of plaintiffs two prior surgeries and the original compensable injury by accident.
15. Plaintiff was seen by Dr. Scott James, an orthopedic surgeon, following her fall. He diagnosed her as having a comminuted patella fracture as well as a femur fracture and an ankle sprain. Dr. James was still treating plaintiff at the time of his deposition on July 2, 1998. At that time, Dr. James was of the opinion that plaintiff had been disabled since her fall on November 30, 1997, and would continue to be totally disabled from employment for some time in the future. Plaintiff had not reached maximum medical improvement as of the date of Dr. James deposition.
16. Dr. Humble stated that plaintiffs continuing problems after he released plaintiff were due to a combination of plaintiffs initial injury on June 15, 1996, and the two resulting surgeries that he performed, as well as plaintiffs lack of progress in physical therapy, and her failure to perform the necessary exercises, which resulted in significant quadriceps weakness.
17. Dr. James was of the opinion and the Commission finds that plaintiffs original injury of June 15, 1996, was a contributing proximate cause of her subsequent fall on November 30, 1997.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On June 15, 1996, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with the defendant-employer. On November 30, 1997, plaintiff sustained another injury which was causally related to the primary injury by accident and was precipitated by the primary injury of June 15, 1996. N.C. Gen. Stat. 97-2(6), Starr v. Charlotte Paper Co.,8 N.C. App. 604, 175 S.E.2d 342 (1970).
2. Plaintiff quit work on June 7, 1997, substantially in part because of the pain she was suffering from her compensable knee injury. However, she was not disabled from performing the light duty that was available. Plaintiff made no claim for benefits after she quit her job.
3. As a result of the fall on November 30, 1997, plaintiff was disabled from work and is entitled to temporary total disability compensation benefits at the rate of $201.34 per week from December 1, 1997 and continuing until further order by the Commission. N.C. Gen. Stat. 97-29.
4. Plaintiff is entitled to have defendants provide all medical treatment arising from her injury on November 30, 1997, including, but not limited to, surgical repair of plaintiffs right knee, to the extent the treatment tends to effect a cure, give relief, or lessen the period of disability. N.C. Gen. Stat. 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff at a rate of $201.34 per week from December 1, 1997 until further order by the Commission. The portion of this compensation that has accrued shall be paid in a lump sum subject to a reasonable attorneys fee approved in paragraph 3 of this Award.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her November 30, 1997 injury, including, but not limited to, surgery of plaintiffs right knee, and any medical treatment to her right leg and ankle, to the extent that the same is reasonably designed to effect a cure, give relief, or lessen the period of disability. If recommended by the medical care providers, defendants shall also provide appropriate vocational rehabilitation services to assist plaintiff in returning to gainful employment.
3. A reasonable attorneys fee in the amount of twenty-five percent (25%) of the compensation due under paragraph one of the Award is approved for plaintiffs counsel. Said amount shall be deducted from the accrued benefits and shall be paid directly to plaintiffs counsel. Further, counsel shall be entitled to every fourth check for future temporary total disability benefits due plaintiff.
4. Defendants shall bear the cost.
This the ___ day of August 2000.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/bjp