The Full Commission reviewed the Opinion and Award of Deputy Commissioner Bost based upon the record of the proceedings before Deputy Commissioner Bost and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioners denial of benefits and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured, with AIG Claims Services, Inc. as the servicing agent.
3. An employee-employer relationship existed between the parties at all relevant times.
4. Plaintiffs average weekly wage was $436.52, which yields a compensation rate of $291.01 per week.
***********
Based upon all of the competent evidence of record and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was born on October 18, 1962, and began working for defendant on March 6, 1989. Plaintiffs job was as a machine operator setting water meters and fire hydrants.
2. On or about October 7, 1997, plaintiff and several co-workers went over to the recreation department to put in an underground power system. They rented a "walk behind trencher and a tire on it was flat. The trencher weighed 700 to 800 pounds. They unloaded the trencher on the street and were trying to lift it onto the sidewalk when plaintiff injured his back. Injuring ones back while lifting a heavy piece of equipment on the job constitutes a specific traumatic incident of the work assigned. Plaintiffs employer denied his workers compensation claim.
3. Dr. John M. Bennett (no relation) treated plaintiff and diagnosed a lumbosacral muscle strain and spasm. Dr. Bennetts records show no complaints of any radicular symptoms but plaintiff said he had pain radiating to his legs at that time. Plaintiff was instructed to return if his symptoms did not resolve. Plaintiff did not return with complaints of back pain until February 25, 1998, although he did return to seek treatment for other medical problems in the interim.
4. Plaintiff returned to Dr. Bennett on February 25, 1998, telling Dr. Bennett that he had re-injured his low back the day before. The re-injury came while plaintiff was working with heavy fire hydrants. Dr. Bennetts medical note states: "He was having some nausea and dry heaves and subsequently felt a pain in his back. He has felt pain going down both legs since that time. Due to persistent radicular pain, plaintiff returned to see Dr. Bennett on March 17, 1998.
5. An MRI and x-rays of the lumbosacral spine were performed on March 25, 1998. X-rays revealed no evidence of fracture or dislocation, and no spondylolysis or spondylolisthesis. The MRI revealed desiccation of the L4-L5 and L5-S1 intervertebral disc; moderate right posterior paracentral L5-S1 disc herniation with involvement of the right S1 nerve root in the region of the lateral recess. Dr. Bennett referred plaintiff to Dr. Martin M. Henegar.
6. Dr. Henegar saw plaintiff on March 30, 1998. On this visit, plaintiff did not mention the dry heaves incident in late February in the history he gave Dr. Henegar but did mention that he thought he hurt his back installing fire hydrants as part of his job. Plaintiff was diagnosed with a large disk herniation on the right of L5-S1.
7. On April 21, 1998, Dr. Henegar performed an L5-S1 microdiscectomy on the right. On May 28, 1998, Dr. Henegar indicated that plaintiffs symptoms had much improved since before his surgery and on June 18, 1998, plaintiff was released to return to work light duty with progression to full duty as tolerated. Dr. Henegar rendered the opinion, which the Full Commission finds as fact, that plaintiff injured his lumbar spine at work in October 1997 and that this injury was exacerbated and aggravated at work in February 1998. The Full Commission further finds that the second back injury was a natural progression of the first, regardless of whether the second back injury resulted from installing fire hydrants on the job or from dry heaves on or off the job.
8. Plaintiff missed fewer than seven days from work directly after the October 7, 1997 injury but missed more than 21 days from work as a result of the February 1998 compensable aggravation of his compensable October 7, 1997 injury.
9. On December 31, 1998, Dr. Carol A. Kooistra performed an independent medical evaluation. Plaintiff told Dr. Kooistra that the pain in his legs started immediately after the October 7, 1997, incident. There was no mention of any strenuous work activity in February, and there was no mention of the dry heaves incident in February. Dr. Kooistra issued a 10% permanent partial disability rating to the back. Dr. Kooistra did not issue an opinion with regard to causation.
10. On June 21, 1999, Dr. Rhyne performed an independent medical evaluation. This examination was based on plaintiffs medical records, physical examination, and history given to him by plaintiff. Dr. Rhyne diagnosed plaintiff with status post light L5-S1 microdiscectomy with very little residual discomfort. Dr. Rhynes opinion was that the ruptured disc occurred in February of 1998 as a result of the dry heaves episode. Dr. Rhyne agreed that plaintiff had a 10% permanent partial disability to his back based on the ruptured disc and surgery.
11. Plaintiff returned to work with defendant at the same or greater average weekly wage on June 22, 1998, and at the date of oral argument before the Full Commission was still employed with defendant.
12. Plaintiffs attorney filed a Form 33 with his brief in this matter in late October or early November 1999, reciting the date of a new injury as February 1998. Prior to that time, plaintiff had not filed any other document with the Industrial Commission giving notice of an injury occurring in February of 1998. Defendant objected to the lateness of the filing. However, the consequences of the February 1998 incident was fully litigated in the present proceeding, with plaintiffs evidence showing it was the result of lifting fire hydrants and defendants evidence to the effect that the February injury was the result of dry heaves. Plaintiffs counsel was not aware of the February incident until discovered in the medical notes during preparation for trial. Defendant was able to defend against the consequences of the February 1998 injury and thus was not prejudiced by the lateness of the notice.
13. Plaintiff was unable to work because of his compensable injuries for the following periods: October 10, 1997; November 5, 6 and 7, 1997; February 24 and 25, 1998; March 20 and 25 through 31, 1998; the entire months of April and May, 1998; and the 1st through the 21st of June, 1998.
***********
Based upon the findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of the employment on October 7, 1997. This injury was caused by a specific traumatic incident of the work assigned. N.C. Gen. Stat. 97-2(6).Fish v. Steelcase, Inc., 116 N.C. App. 703, 449 S.E.2d 233 (1994), cert.denied, 339 N.C. 737, 454 S.E.2d 650 (1995).
2. When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimants own intentional conduct. Thus, a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury. Starr v.Charlotte Paper Co., 8 N.C. App. 604, 175 S.E.2d 342 (1970).
3. The plaintiff is entitled to have the defendant pay for medical expenses incurred or to be incurred in the future as a result of the compensable injury of October 7, 1997, and the aggravation thereof of February 25, 1998. N.C. Gen. Stat. 97-2(19). Starr v. Charlotte PaperCo., 8 N.C. App. 604, 175 S.E.2d 342 (1970).
4. When the injured worker is unable to earn wages because of his injury for a period of 21 days or longer, he is entitled to disability compensation for the first seven days of disability as well as the remainder. "No compensation, as defined in G.S. 97-2(11), shall be allowed for the first seven calendar days of disability resulting from an injury, except the benefits provided for in G.S. 97-25. Provided however, that in the case the injury results in disability of more than 21 days, the compensation shall be allowed from the date of the disability. N.C. Gen. Stat. 97-28.
5. Plaintiff is also entitled to 30 weeks of compensation at the rate of $291.01 per week for the 10% permanent partial disability rating of his back. N.C. Gen. Stat. 97-31(23).
6. An employee is not entitled to recover unless he can show that he has complied with the provisions of the statute in respect to the giving of notice, or has shown reasonable excuse to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied that the employer has not been prejudiced thereby. Singleton v. Durham Laundry Co., 213 N.C. 32, 195 S.E. 34 (1938). N.C. Gen. Stat.97-22. The purpose of the notice-of-injury requirement is two-fold. It allows the employer to provide immediate medical diagnosis and treatment with a view to minimizing the seriousness of the injury, and it facilitates the earliest possible investigation of the circumstances surrounding the injury. Booker v. Duke Medical Ctr., 297 N.C. 458,256 S.E.2d 189 (1979). Here, plaintiffs seeking treatment immediately after the February incident served the first purpose. Since the second injury was a natural consequence of the first, the circumstances (dry heaves as shown by defendant or lifting fire hydrants as shown by plaintiff) were not determinative of liability and thus defendant was not prejudiced.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff temporary total disability compensation for the periods of time set out in finding of fact paragraph 14 at the rate of $291.01 per week for the time plaintiff was unable to earn wages because of his compensable injuries. Such amount has accrued and shall be paid in a lump sum subject to the attorney fees set forth below. Defendant shall pay interest on the entire lump sum at the rate of 8 per cent per annum to plaintiff from March 28, 1999, the date of the hearing before the Deputy Commissioner, until the date paid.
2. Defendant shall pay to plaintiff permanent partial disability compensation for 30 weeks at the rate of $291.01 per week for the 10% rating to plaintiffs back. Such amount has accrued and shall be paid in a lump sum subject to the attorney fees set forth below. Defendant shall pay interest on the entire lump sum at the rate of 8 per cent per annum to plaintiff from March 28, 1999, the date of the hearing before the Deputy Commissioner, until the date paid.
3. Defendant shall pay directly to plaintiffs counsel 25% of the compensation due under paragraphs 1 and 2 of this Award but no part of the interest due plaintiff.
4. Defendant shall pay all medical expenses, according to the Industrial Commission Medical Fee Schedule, either already incurred or to be incurred in the future growing out of the compensable injury of October 7, 1997 and the compensable injury of February 1998 so long as such expenses are incurred to effect a cure, lessen the period of disability, or reduce pain. Such medical expenses are subject to the limitation of N.C. Gen. Stat. 97-25.1.
5. Defendant shall pay the costs.
This 20th day of November 2000.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER