***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner.
 *********** EVIDENTIARY MATTERS
At the hearing before the Deputy Commissioner, plaintiff submitted the following Exhibits which were admitted into the record:
1. A package containing surgical hardware, marked as Plaintiff's Exhibit 1.
2. A pillow used by plaintiff to brace his arm, marked as Plaintiff's Exhibit 2.
3. A typed summary of plaintiff's medical treatment and work history, marked as Plaintiff's Exhibit 3.
4. Handwritten notes by plaintiff, marked as Plaintiff's Exhibit 4.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. Defendant-employer had workers' compensation insurance coverage through CompTrust AGC and such policy was in full force and effect of 25 September 1993.
4. Plaintiff's average weekly wage at the time of his 25 September 1993 admittedly compensable injury was $857.99, yielding the maximum compensation rate for 1993 of $442.00.
5. On 25 September 1993, plaintiff was carrying a roll of mesh wiring when he stepped on a piece of rebar, lost his balance and fell down an embankment, sustaining a crush injury to his right upper extremity. Defendants do not dispute the compensability of plaintiff's claim.
6. Plaintiff has received total disability compensation benefits for the following periods; 25 September 1993 through 16 January 1994, 24 May 1994 through 24 October 1994, and 12 November 1996 through the present.
7. At the hearing before the Deputy Commissioner, the parties submitted a Notebook of Stipulated Documents, including the Pre-Trial Agreement, medical records, Industrial Commission forms, social security earnings records and vocational rehabilitation records. The Notebook was admitted into the record as Stipulated Exhibit 1.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 52 years old and a high school graduate.
2. Plaintiff's work history consists of jobs primarily in the construction industry as a steelworker or ironworker. From 1966 through 1970, plaintiff worked for contractors at various job sites throughout the southeast. Between 1970 and 1986, plaintiff worked for Waco Steel, based in Charlotte, North Carolina. Beginning in 1986 and continuing through 1996, plaintiff worked for defendant-employer at various locations throughout western North Carolina. Defendant-employer is based in Asheville, North Carolina.
3. On 25 September 1993, plaintiff sustained an admittedly compensable injury by accident when he suffered a crush injury to his right shoulder. The claim was accepted as compensable by defendants through an Industrial Commission Form 21 Agreement for Compensation which was approved on 8 November 1993. Pursuant to the Form 21, plaintiff was paid total disability benefits from 25 September 1993 through 16 January 1994, 24 May 1994 through 24 October 1994, and 12 November 1996 through the present.
4. Following plaintiff's injury by accident, he was transported to St. Joseph's Hospital in Asheville, where he underwent an open reduction and internal fixation (ORIF) of comminuted displaced segmental fractures to his right humerus. The surgical procedure was performed by Dr. David Cappiello. Plaintiff was medically removed from work from the date of his injury until 16 January 1994.
5. On 17 January 1994, plaintiff returned to work for defendant-employer with restrictions, but continued to experience pain in his right shoulder. Subsequent examination revealed a non-union of the original fracture. Therefore, on 24 May 1994, plaintiff underwent a second surgery to repair the non-union fracture with bone grafting and an internal fixation. Plaintiff was again medically removed from work from the date of the second surgery until 24 October 1994.
6. On 25 October 1994, plaintiff returned to work for defendant-employer with restrictions. He was employed in a supervisory capacity that did not require working on roofs or climbing ladders. Following his return to work, plaintiff continued to experience pain and other symptoms related to his right shoulder and right upper extremity for which he continued to receive treatment. In August 1995, plaintiff's care was transferred to Dr. Gordon I. Groh, who worked with Dr. Cappiello.
7. Dr. Groh diagnosed plaintiff with right shoulder impingement syndrome for which he performed surgery on 10 October 1995. Following a period of recovery, plaintiff returned to restricted duty work for defendant-employer but continued to experience pain and limitations in movement in his right upper extremity. Plaintiff was referred to Dr. Paul C. Perlik for a second opinion. Following his examination, Dr. Perlik opined that plaintiff's condition represented a complex shoulder and humeral reconstructive challenge. Dr. Perlik further opined that plaintiff's ongoing shoulder and right upper extremity symptoms were related to his 25 September 1993 compensable injury.
8. Plaintiff also received treatment by Dr. Donald F. D'Alessandro and Dr. Patrick Connor for his ongoing symptoms. Based upon their examinations of plaintiff, both opined that a total shoulder arthroplasty revision surgery was warranted. In a note dated 17 October 1996, Dr. D'Alessandro related plaintiff's condition for which surgery was recommended to his 25 September 1993 injury by accident.
9. On 12 November 1996, Dr. D'Alessandro perform a resection arthroplasty with removal of the humeral and glenoid components of plaintiff's right shoulder. However, Dr. D'Alessandro could not complete the planned surgery due to problems encountered during the procedure. It was discovered that the prosthesis was very loose and the bone for the ball and socket was not adequate; therefore, an effective shoulder replacement could not be completed.
10. Following the 12 November 1996 surgery, plaintiff continued to experience debilitating pain in his right upper extremity. As a result, Dr. D'Alessandro performed an arthrodesis surgery in March 1997 which involved a fusion of the right upper extremity to the right shoulder. The purpose of the surgery was to fuse the joint preventing motion, thereby preventing the bones from rubbing together. Although the procedure is designed to reduce pain, it also results in a loss of function in the shoulder and upper extremity because the bones are fused together, hindering functional motion of the shoulder. Following the procedure, plaintiff experienced some reduction in the pain he was experiencing in his right upper extremity, but he also experienced a loss of function in the right shoulder.
11. Following plaintiff's recovery from the arthrodesis surgery, Dr. D'Alessandro assigned plaintiff a 100% permanent partial disability rating to the right shoulder and a 50% permanent partial disability rating to his right arm.
12. On 17 October 1998, plaintiff was involved in a single vehicle automobile accident. On that date, plaintiff's use of his right arm was limited to moving it along a horizontal plane. He was unable to lift his right hand at all and drove his vehicle exclusively with his left hand, arm and shoulder. When plaintiff drove, he placed a pillow on the center console of his vehicle upon which he rested his right arm. The automobile accident occurred at 9:30 p.m. as plaintiff was driving home from a dinner. Plaintiff approached a curve at or below the posted speed limit, encountered some gravel in the roadway and slid sideways towards the right shoulder. To avoid going down a drop off on the right side of the road, plaintiff steered the car to the left and caused his vehicle to veer directly across the road toward an embankment rising off the left side of the highway. Plaintiff attempted to correct the movement of his vehicle but was unable to change direction. Plaintiff's vehicle ran up the left side embankment and flipped several times. Plaintiff was ejected from the vehicle and lost consciousness.
13. At the hearing before the Deputy Commissioner, plaintiff testified that in his opinion as an experienced driver, had he had use of his right arm he would have had more control.
14. There is insufficient evidence from which to find that plaintiff would have been able to avoid the 17 October 1998 automobile accident but for the limited use of his right upper extremity.
15. There is insufficient evidence upon which to conclude that plaintiff's 17 October 1998 automobile was a direct and natural result of his 25 September 1993 compensable injury by accident.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. When a primary injury is shown to be compensable, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct. Therefore, in order for a subsequent injury to be compensable under the Act, it must be shown that it is the direct and natural result of a compensable primary injury. Starr v. Charlotte Paper Co., 8 N.C. App. 604, 175 S.E.2d 342
(1970).
2. In this case, plaintiff has failed to present evidence sufficient to determine that the lack of mobility in his injured right arm prevented him from regaining control of his automobile, thereby avoiding the 17 October 1998 automobile accident. Therefore, plaintiff has failed to show that the 17 October 1998 automobile accident was a direct and natural result of his compensable injury and that the resulting injuries are likewise compensable. Id.
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be and is hereby DENIED.
2. Each side shall pay its own costs.
This the ___ day of September, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER