The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. The date of the alleged injury which is the subject of this claim is January 7, 2009.
2. On January 7, 2009, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On January 7, 2009, an employer-employee relationship existed between plaintiff and defendant-employer.
4. On January 7, 2009, defendant-employer employed three or more employees.
5. Defendant-employer is insured by Discovery Insurance Company.
6. Plaintiff's average weekly wage is $777.04, with a compensation rate of $518.06. Plaintiff received temporary total disability benefits from March 5, 2009, through May 20, 2009, and again from May 31, 2009, and continuing.
7. Defendants denied the relationship between the initial compensable injury and the need for the total knee replacement as recommended by Dr. Frank Aluisio, pursuant to a North Carolina Industrial Commission Form 61 Denial of Workers' CompensationClaim, dated August 4, 2009.
8. The following documents were admitted into evidence during the hearing before the Deputy Commissioner:
 • Stipulated Exhibit 1: Pre-Trial Agreement;
 • Stipulated Exhibit 2: Industrial Commission Forms, Motions, Correspondence and Plaintiff's Medical Records; and
 • Stipulated Exhibit 3: Statement of Marguerite Everett, employee of Hillco Ltd. Employee Benefit Plan. *Page 3 
9. The issues for determination before the Deputy Commissioner were as follows:
 a. Whether plaintiff sustained a compensable injury within the course and scope of her employment on January 7, 2009 and if so, to what benefits is plaintiff entitled;
 c. Whether defendant-employer was being stubborn and unfoundedly litigious in the defense of this claim by denying the surgical recommendations of the treating physician; and
 d. Whether the total knee replacement recommended by Dr. Frank Aluisio causally related to the January 7, 2009 injury by accident.
10. The only issue on appeal to the Full Commission is whether plaintiff is entitled to an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon all the competent, credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 64 years old. Plaintiff has worked for defendant-employer for over 31 years and is currently employed as Personnel Director. Plaintiff's duties included conducting orientation for new employees, administration of the payroll and defendant-employer's workers' compensation program and other administrative functions.
2. On January 7, 2009, while performing her work duties, plaintiff stood up and struck the corner of her desk, causing her to fall. *Page 4 
3. On January 14, 2009, plaintiff presented to Hagan Pace, a family nurse practitioner at Western Rockingham Family Medicine, with complaints of right hip and right upper leg pain. Plaintiff was diagnosed with a right hip strain and low back pain and treated conservatively with Motrin.
4. On March 4, 2009, plaintiff presented to Dr. Samuel A. Sue, plaintiff's treating physician, with continued complaints of right hip pain. An x-ray taken that day showed a fracture of the central portion of the acetabulum, a concave surface of the pelvis. Consequently, Dr. Sue referred plaintiff to Dr. Frank Aluisio, an orthopedic specialist.
5. The following day, on March 5, 2009, plaintiff presented to Dr. Aluisio, who opined that plaintiff may have a sacral insufficiency fracture from her fall on January 7, 2009. Dr. Aluisio ordered a bone scan to determine more definitively whether plaintiff had a femoral neck, acetabular or sacral insufficiency fracture. Dr. Aluisio recommended that plaintiff use a walker to assist in ambulation.
6. On March 12, 2009, plaintiff returned to Dr. Aluisio for further treatment of her right hip and for review of the bone scan. Plaintiff continued to have significant pain with weight bearing. The bone scan revealed that plaintiff did have a right acetabular fracture and as a result, Dr. Aluisio ordered a CT scan with 3D reconstruction to better evaluate the fracture. At this visit, Dr. Aluisio released plaintiff from work.
7. The CT scan revealed that plaintiff had a tiny crack in the superior acetabulum, which was nondisplaced.
8. On March 16, 2009, defendant-carrier completed a Form 63 Notice of Payment of Compensation Without Prejudice, for an injury to plaintiff's right hip. *Page 5 
9. Although plaintiff's hip condition improved, her back pain increased. At an April 16, 2009, appointment, Dr. Aluisio noted, "She is still having some lower back discomfort and I think that is not related to the fracture per se, but it is related to the fact that her gait got thrown off after she injured the hip." As a result, Dr. Aluisio recommended physical therapy both for range of motion and strengthening of plaintiff's hip and lower back pain. Dr. Aluisio continued to restrict plaintiff from working.
10. On May 19, 2009, plaintiff presented to Dr. *Page 6 
Aluisio for a followup of her right hip and back pain. Plaintiff reported that she no longer had groin pain or lateral hip pain but her pain was now concentrated in her back and buttock area. Plaintiff was now using just a cane for walking and she explained to Dr. Aluisio that she wanted to return to work. Accordingly, Dr. Aluisio released plaintiff to return to work without restrictions on May 20, 2009.
11. On June 2, 2009, plaintiff returned to Dr. Aluisio with a marked increase in back and buttock pain, which radiated down her right side to the bottom of her foot. Plaintiff also experienced some numbness in her right leg. Dr. Aluisio opined that plaintiff's pain was not related to her hip but rather her back due to her altered gait that she developed while recovering from the hip fracture. Dr. Aluisio again restricted plaintiff from working.
12. When plaintiff presented to Dr. Aluisio on June 9, 2009, she complained of problems with her right knee. Dr. Aluisio opined that plaintiff's pre-existing arthritis in her right knee was exacerbated by the January 7, 2009 fall and subsequent altered gait. Dr. Aluisio recommended a cortisone injection for plaintiff's right knee to alleviate her discomfort.
13. It is undisputed that plaintiff had a history of problems with her right knee. In the eighth grade, plaintiff suffered a dislocation of her right knee cap and has occasionally experienced right knee difficulties. For example, in October 2005, plaintiff presented to Dr. Aluisio with complaints that her right knee felt as if it wanted to give out whenever it popped. Plaintiff was not experiencing any knee pain at that time. Dr. Aluisio diagnosed plaintiff with significant patellofemoral arthritis and recommended use of a brace to provide additional stability. At that time, Dr. Aluisio did not recommend any surgical intervention given plaintiff's lack of pain.
14. The evidence revealed that plaintiff required no further medical attention to her right knee from October 2005 until after her January 7, 2009 work injury.
15. In June 2009, upon referral from Dr. Alluisio, plaintiff presented to Dr. Richard Ramos, a physical medicine and rehabilitation specialist, for a series of cortisone injections, including a right S1 nerve root block. The nerve block provided some relief to plaintiff from her right lower limb pain.
16. At a July 8, 2009 appointment, Dr. Ramos recorded that plaintiff's work-related injury on January 7, 2009, caused her right knee osteoarthritis and back condition to become symptomatic. On July 13, 2009, Dr. Ramos performed a third facet injection at plaintiff's right L4-5 and L5-S1. The epidural and facet injections only provided mild benefit for plaintiff.
17. At plaintiff's July 23, 2009 appointment, Dr. Aluisio noted that plaintiff has severe end stage arthritis of the right knee, bone on bone, in the lateral and patellofemoral compartments. Dr. Aluisio opined that plaintiff's January 7, 2009, fall at work did not cause plaintiff's arthritis but caused it to be symptomatic. He opined that plaintiff now required a total right knee arthroplasty to relieve her symptoms. Dr. Aluisio continued to restrict plaintiff from working.
18. When plaintiff presented to Dr. Aluisio on July 28, 2009, he noted that plaintiff's main complaint was her right knee pain. Dr. Aluisio recorded that plaintiff felt her right knee *Page 7 
and her right foot were turning out more, which were conditions that had not occurred before plaintiff's January 7, 2009 work injury.
19. On August 4, 2009 defendant-carrier denied the right knee arthroplasty recommended by Dr. Aluisio on the basis that plaintiff's underlying arthritic condition had not been aggravated or accelerated by her compensable hip injury that occurred on January 7, 2009.
20. Defendant-employer is self-insured for both workers' compensation and for major medical insurance. Although defendant-employer's workers' compensation carrier denied plaintiff's right knee surgery with the filing of an Industrial Commission Form 61 Denial of Workers' Compensation Claim, defendant-employer's major medical coverage would not authorize the surgery. As a result, plaintiff has been unable to have the recommended total right knee arthroplasty.
21. On the issue of whether plaintiff's right knee condition is related to the January 7, 2009 work injury, Dr. Aluisio opined that plaintiff developed an altered gait as a result of her compensable hip fracture and that plaintiff's altered gait exacerbated her right knee condition. Dr. Aluisio indicated that plaintiff's gait was altered shortly after her fall because she was not placing any weight on her right leg, as she was using a walker and other supportive devices.
22. Dr. Aluisio stated that if plaintiff had complained about right knee pain immediately after the January 7, 2009 injury, the fall itself would have exacerbated her knee condition. Since it was several months later when plaintiff complained of right knee symptoms, it was the altered gait pattern caused by her work injury that exacerbated her right knee condition. According to Dr. Aluisio, it was all interconnected and related. Dr. Aluisio opined that it was more likely than not that plaintiff's altered gait pattern increased her right knee symptoms, which necessitated the total knee arthroplasty. *Page 8 
23. When Dr. Aluisio was asked on cross examination whether it was plaintiff's underlying arthritic condition or an aggravation of her right knee symptoms from the altered gait that most likely caused the need for the right knee surgery, Dr. Aluisio opined that plaintiff had arthritis in her right knee for several years but had not complained of right knee symptoms. Dr. Aluisio opined that if plaintiff had not fallen at work on January 7, 2009, she likely would not have returned for treatment when she did. Dr. Alluisio again opined that it was more likely that plaintiff's altered gait exacerbated her right knee symptoms due to the January 7, 2009 fall.
24. The Full Commission finds, based upon the greater weight of the medical evidence, that plaintiff's right hip injury resulting from her admittedly compensable January 7, 2009 accident caused her altered gait, which, in turn, materially aggravated her pre-existing, previously non-disabling degenerative right knee condition to the point where her right knee condition became symptomatic requiring a total knee arthroplasty. The material aggravation of plaintiff's degenerative right knee condition was a direct and natural consequence of her January 7, 2009 injury by accident.
25. The Full Commission finds that the total right knee arthroplasty recommended by Dr. Aluisio is reasonably required in order to effect a cure, to give relief, and to lessen plaintiff's period of disability.
26. Plaintiff is not at maximum medical improvement with respect to her right knee condition, as the total right knee arthroplasty recommended by Dr. Aluisio has not yet been performed.
27. Defendants did not defend this matter without reasonable grounds.
 * * * * * * * * * * * *Page 9 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On January 7, 2009, plaintiff sustained an admittedly compensable injury by accident to her right hip, arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of plaintiff's compensable injury by accident on January 7, 2009, plaintiff's gait was altered, which subsequently aggravated her pre-existing, previously non-disabling degenerative right knee condition to the point where her right knee condition became symptomatic and requires surgery. The material aggravation of plaintiff's degenerative right knee condition was a direct and natural consequence of her January 7, 2009 work injury and is, therefore, compensable.Starr v. Charlotte Paper Co.,8 N.C. App. 604, 612, 175 S.E.2d 342, 347 (1970).
3. As a direct and proximate result of plaintiff's compensable injury by accident on January 7, 2009, plaintiff has been unable to earn the same or greater wages as she was earning in any employment. As a result, plaintiff is entitled to receive ongoing temporary total disability compensation at the rate of $518.06 per week, continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
4. As a direct and proximate result of plaintiff's compensable injuries by accident on January 7, 2009, plaintiff is entitled to payment of all medical expenses incurred or to be incurred for her right hip and right knee, including the total right knee arthroplasty recommended by Dr. Aluisio, for so long as such examinations, evaluations and treatments may reasonably be *Page 10 
required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
5. Defendants have not defended this action in an unreasonable manner or without reasonable grounds and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v. Mountain BreezeRestaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved below, defendants shall pay ongoing temporary total disability compensation to plaintiff at the rate of $518.06 per week and continuing until further Order of the Industrial Commission.
2. Defendants shall pay all past and future medical expenses incurred or to be incurred as a result of plaintiff's compensable injury by accident to her right hip and right knee, including the total right knee arthroplasty recommended by Dr. Aluisio, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the ongoing compensation due plaintiff under Paragraph One of this Award as of the date of this Opinion and Award is approved for plaintiff's counsel and shall be paid by defendants as follows: twenty-five percent of any compensation which has accrued shall be paid directly to *Page 11 
plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This 4th day of January, 2011.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ CHRISTOPHER S. SCOTT COMMISSIONER *Page 1