***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Baddour, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the parties at all relevant times.
3. Discovery Insurance Company is the carrier on the risk.
 ***********
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff began working for defendant-employer as a social worker in October 2000.
2. The plaintiff's job involved frequent driving to visit patients in their homes.
3. On December 12, 2000, the plaintiff suffered an admittedly compensable injury by accident when she was involved in a motor vehicle collision.
4. Following the accident, the plaintiff complained primarily of right wrist pain. X-rays of the right wrist did not reveal any fractures. The plaintiff was released to return to work the day after the accident with restrictions of no lifting over five to ten pounds with her right hand.
5. On December 26, 2000, the plaintiff presented to Philip Van Campen of Coastal Chiropractics with continued complaints of right wrist pain. At this time, the plaintiff also had a swollen left wrist. She was also experiencing some discomfort in her lower back. Chiropractor Van Campen's treatment consisted of spinal manipulations, extremity manipulations to the wrists, electrical muscle stimulation, and rehabilitative exercises.
6. An MR arthrogram of the plaintiff's right wrist was performed on February 23, 2001, and revealed a partial TFC tear with no evidence of major ligamentous injury.
7. Upon referral, the plaintiff was examined by Dr. Richard S. Moore, Jr. of Wilmington Orthopaedic Group on February 28, 2001. From the point that the plaintiff began treating with Dr. Moore, she complained only of right wrist pain, and Dr. Moore treated her only for right wrist pain.
8. Dr. Moore initially treated the plaintiff with splinting and injection therapy of the right wrist for three weeks. After these treatments failed to produce favorable results, Dr. Moore recommended an arthroscopy on the right wrist that was performed on May 3, 2001. The plaintiff was taken out of work at this time, and defendants began paying temporary total disability pursuant to a Form 60.
9. On May 14, 2001, Dr. Moore released the plaintiff to return to light duty left-handed work, and plaintiff returned to work for defendant-employer.
10. On July 23, 2001, the plaintiff was exiting her home when she slipped and fell down the stairs outside of her home and fractured her left ankle. The plaintiff testified that, at the time she fell, she was using her left hand to maneuver her walker because she was still recovering from right wrist surgery as a consequence of her December 12, 2000, compensable accident. She testified that she felt herself slipping and couldn't use her right hand to break her fall. The plaintiff stated during deposition: [W]hen I realized I was slipping, I think my natural instinct kicked in. I didn't have strength in my hand to grab the knob or the security bar. . . . As a result, to keep from re-injuring this [right] hand, I just let it go, and I fell on my left side. The Full Commission finds that, but for the plaintiff's lack of use of her right hand due to her compensable injury by accident, she would have not fallen in the manner in which she fell and likely would not have fractured her left ankle.
11. Following her slip and fall at home on July 23, 2001, the plaintiff was unable to work due to her fractured left ankle.
12. The plaintiff's slip and fall at home on July 23, 2001, arose out of and in the course and scope of her employment in that the incident was a direct and natural consequence that flowed from her December 12, 2000, compensable injury by accident.
13. Following her slip and fall, the plaintiff had two surgical procedures on her left ankle. She reached maximum medical improvement for her left ankle injury in July 2002, but never returned to work.
14. On December 14, 2001, Dr. Moore found that the plaintiff had reached maximum medical improvement with respect to her right wrist. He assigned a 10% permanent partial impairment rating to the plaintiff's right hand and indicated she should not lift more than five pounds with the right hand. Further, Dr. Moore stated that the plaintiff's wrist injury should not limit her ability to perform her job as a social worker.
15. On May 23, 2003, the plaintiff complained of left wrist pain to Dr. Moore for the first time since she began treating with him in February 2001. While the plaintiff had initially reported some left wrist pain following her automobile accident on December 12, 2000, she was no longer complaining of left wrist pain by the time she began treating with Dr. Moore on February 28, 2001. Accordingly, over two years elapsed between the time that the plaintiff first began treating with Dr. Moore (for her right wrist injury) and when she first reported left wrist pain to Dr. Moore.
16. Dr. Moore diagnosed the plaintiff's left wrist condition as de Quervain's stenosing tenosynovitis. Following a course of failed conservative measures, the plaintiff underwent a tenosynovectomy of her left first extensor compartment on December 8, 2003.
17. Based upon the testimony of Dr. Moore, and the other competent evidence of record, the plaintiff has failed to establish that her left wrist tenosynovitis is casually related to her compensable automobile accident on December 12, 2000.
18. Based upon the competent evidence of record, the plaintiff has shown that she has been temporarily totally disabled since July 23, 2001, as a result of her admittedly compensable automobile accident on December 12, 2000, and her slip and fall on July 23, 2001, which was a direct and natural consequence of the December 12, 2000, compensable accident. Rather, any periods of disability that the plaintiff has suffered since July 23, 2001, are the result of her non-compensable left ankle injury and left wrist condition.
19. According to the Form 22 filed by defendants, the plaintiff worked a total of 64 days between October 9, 2000, her first day of employment, and December 12, 2000, the date of injury. She earned a total of $2,983.44 during this period, which yields an average weekly wage of $326.34, and a weekly compensation rate of $217.56.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In determining whether the aggravation of an injury or a distinct new injury is compensable, a claimant must show that the primary injury arises out of and in the course of employment and that every natural consequence that flows from the injury likewise arises out of the employment. Starr v. Paper Co., 8 N.C. App. 604, 175 S.E.2d 342, cert.denied, 277 N.C. 112 (1970). Further, when a first cause produces a second cause that produces a result, the first cause is a cause of the result.Petty v. Transport, Inc., 276 N.C. 417, 173 S.E.2d 321 (1970). The plaintiff's left ankle injury resulted from an accident arising out of and in the course of her employment in that the incident was a direct and natural consequence that flowed from her December 12, 2000, compensable injury by accident. See Id. and N.C. Gen. Stat. § 97-2(6).
2. The plaintiff failed to establish that her left wrist condition is causally related to her compensable injury by accident on December 12, 2000, and the plaintiff's left wrist condition is therefore not compensable. Id.
3. The plaintiff is entitled to temporary total disability compensation at the weekly rate of $217.56 from July 23, 2001, and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
4. Although the plaintiff is entitled to permanent partial disability compensation for the ten percent (10%) rating to her hand pursuant to N.C. Gen. Stat. § 97-31, her greater remedy at the present time is to receive compensation for temporary total disability pursuant to N.C. Gen. Stat. § 97-29.
5. The plaintiff is entitled to medical treatment for her right wrist and left ankle that is reasonably necessary to effect a cure, give relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants shall pay to the plaintiff temporary total disability compensation at a weekly rate of $217.56 from July 23, 2001, and continuing until further order of the Commission, subject to the attorney's fee provided herein. The portion of this award that has accrued shall be paid to the plaintiff in lump sum.
2. The defendants shall provide medical treatment for the plaintiff's right wrist and left ankle that is reasonably necessary to effect a cure, give relief, or lessen the period of disability.
3. The defendants shall pay to the plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded to the plaintiff herein. The fees based upon the portion of the award that has accrued shall be paid to the plaintiff's counsel in lump sum; thereafter, defendants shall pay to the plaintiff's counsel every fourth check of compensation due the plaintiff.
4. The plaintiff's claim to establish the compensability of her current left wrist condition must be, and the same is hereby, DENIED.
5. The defendants shall pay the costs.
This 3rd day of October 2005.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN