***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with modifications, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as: *Page 2 
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the parties at all times relevant to these proceedings.
3. The workers' compensation insurance carrier providing insurance coverage is correctly named, above.
4. Plaintiff's average weekly wage at all times relevant to these proceedings was $418.85, yielding a compensation rate of $279.25.
5. Plaintiff sustained an injury on or about August 28, 2007, with the exact date to be determined by the North Carolina Industrial Commission.
6. Plaintiff's injury of August 28, 2007 arose out of and in the course of employment and is compensable.
7. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit one (1) — Plaintiff's medical records;
 b. Stipulated Exhibit two (2) — North Carolina Industrial Commission forms and filings, and discovery responses;
 *********** ISSUE
The issue for determination is whether Plaintiff's broken ankle suffered on or about October 4, 2007 is causally related to her August 28, 2007 work injury, and if so, to what benefits is she entitled?
 *********** *Page 3 
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 31 years old, with a date of birth of February 25, 1978. Plaintiff graduated from high school and completed a licensed practical nurse (LPN) program in New York. Plaintiff's work history includes employment at Waffle House, Wal-Mart, and various gas stations. Plaintiff worked for Wilco Hess Store, #1891 (hereinafter referred to as "Defendant-Employer") in Greenville, North Carolina as a manager on the 3:00 p.m. to 11:00 p.m. shift during the week, and the 5:00 a.m. to 3:00 p.m. shift on the weekends.
2. At approximately 10:55 p.m. on August 28, 2007 while preparing to close the store, an armed, male assailant robbed Plaintiff. The armed assailant walked into the store, pointed a gun at Plaintiff, then put the gun to her mouth and demanded all the money in the store. The armed assailant repeatedly told Plaintiff that he was going to "blow her brains out," and instructed Plaintiff to not call the police when he left or he would find and kill her.
3. Once the armed assailant left, Plaintiff called 911 on her cellular telephone, and pushed the store's panic button.
4. While Plaintiff was on duty on August 19, 2007, another robbery at the same location occurred. Four (4) separate robberies occurred at this store within a four (4) week period. The August 28, 2007 incident was the sixth (6th) time that Plaintiff was the victim of a robbery, and her second (2nd) robbery while working for Defendant-Employer.
5. On August 29, 2007, Plaintiff presented to Pitt County Memorial Hospital in Greenville, North Carolina. Dr. Thomas Howard Clay, a psychiatrist, diagnosed Plaintiff with *Page 4 
acute post-traumatic stress disorder (PTSD). In addition, Dr. Clay referred Plaintiff for outpatient psychiatric treatment and took her out of work.
6. On September 7, 2007, Plaintiff began treating at Brody School of Medicine at East Carolina University for complaints of anxiety and depression. Ms. Ethel Linda Biehl, a physician's assistant, diagnosed Plaintiff with PTSD, prescribed Zoloft, Xanax, and Vistaril, and directed her to return for a follow-up appointment on September 12, 2007. PA Biehl also recommended psychiatric treatment for medication review and psychotherapy, and directed Plaintiff to remain out of work.
7. On September 17, 2007, Defendants accepted Plaintiff's August 28, 2007 work injury as compensable via a Form 60. On this Form 60, Defendants described Plaintiff's injury as "mental trauma due to armed robbery." Further, Defendants listed Plaintiff's average weekly wage as $356.71, and her weekly compensation rate as $237.82. Defendants thereafter began to pay temporary total disability compensation to Plaintiff based upon these figures. At the hearing before the Deputy Commissioner, the parties stipulated to an average weekly wage of $418.85, yielding a compensation rate of $279.25.
8. On October 5, 2007, while still out of work and undergoing treatment for PTSD, Plaintiff went outside of her townhome to check her mail. As she reached the mailbox, Plaintiff believed she saw the assailant who robbed her on August 28, 2007 on the street in close proximity to her. Plaintiff immediately panicked, ran, and tripped over the nearby curb, causing her to fall and injure her right ankle, knee, and leg. In spite of Plaintiff's injuries, she got up and continued to run until she was inside of her townhome. Plaintiff's roommate contacted the police. *Page 5 
9. Plaintiff believed the assailant obtained a copy of the police report from the August 28, 2007 robbery and got her address. Plaintiff feared that since the assailant made several threats to kill her if she contacted the police, he would carry out this threat upon realizing that she did contact the police.
10. Shortly after the October 5, 2007 incident, Plaintiff presented to Pitt County Memorial Hospital with complaints of right lateral ankle pain, right medial knee pain, and a large abrasion to her right lower leg. Plaintiff reported that she injured her right ankle, knee, and leg when she ran and tripped over a curb and landed in the grass earlier that day. The radiology films taken that day revealed a right ankle fracture. Plaintiff received an ankle splint, a prescription for pain medication, a referral to an orthopaedist and instructions to remain non-weight bearing.
11. On October 8, 2007, Dr. Christopher Michael Barsanti, an orthopaedist, saw Plaintiff. Dr. Barsanti diagnosed Plaintiff as having a displaced lateral malleolus ankle fracture and recommended surgery.
12. On October 9, 2007, Dr. Edward Charles Brown, III performed a right ankle open reduction and internal fixation surgery on Plaintiff. When Dr. Brown saw Plaintiff for a post-operative follow-up on October 19, 2007, he placed her in a non-weight bearing short leg cast and gave her a prescription for a wheelchair with leg extensions.
13. On October 24, 2007, Dr. Pheston Gray Shelton, IV, a psychiatrist, saw Plaintiff for an initial visit, at which time he also diagnosed PTSD. On January 7, 2008, Dr. Shelton opined that "[s]ince working with money, near gas stations and retail stores are triggers for her [Plaintiff], I would advice [sic] that she not work near areas that involve the exchange of money, *Page 6 
or near gas stations. I would also advise that she not work during the night time." Dr. Shelton further stated that he hoped that Plaintiff would be able to return to work in the near future.
14. At the time of his deposition on June 6, 2008, Dr. Shelton continued to treat Plaintiff for PTSD. As of Plaintiff's March 20, 2008 visit, she continued to exhibit panic attacks when discussing the August 28, 2007 robbery and she still had problems with concentration. At this visit, Dr. Shelton's diagnosis was acute PTSD and major depressive disorder.
15. On October 24, 2007, Defendants denied the compensability of Plaintiff's October 5, 2007 right ankle injury.
16. Dr. Shelton opined to a reasonable degree of medical certainty and the Full Commission finds as fact, that the August 28, 2007 robbery caused Plaintiff to suffer from PTSD, and that her reaction of running away upon seeing a person near her that she perceived to be the robber was a common type of reaction for a PTSD patient.
17. At the time of his deposition Dr. Shelton did not know if Plaintiff could work in positions dealing with the exchange of money or in public places due to her PTSD. Dr. Shelton further opined that, although Plaintiff has some training in nursing and enjoyed this profession, she is unable to concentrate or study in order to take the additional classes she may need to work in the nursing field. The Full Commission gives great weight to the testimony of Dr. Shelton.
18. On November 2, 2007, Plaintiff saw Dr. Brown again, at which time he prescribed a walker boot and continued her medication. On November 28, 2007, Dr. Brown referred Plaintiff to physical therapy for ankle rehabilitation two (2) times a week for six (6) weeks, and allowed her to resume full weight bearing. Dr. Brown saw Plaintiff on February 1, 2008, after completion of physical therapy. Dr. Brown prescribed an ankle brace; however, Plaintiff was unable to purchase it because of financial difficulty. *Page 7 
19. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's testimony is credible with respect to the events that transpired during the August 28, 2007 store robbery, the psychological symptoms she suffered following this robbery, and the circumstances giving rise to the October 5, 2007 incident in which she panicked, ran away, and fell, fracturing her right ankle.
20. The Full Commission finds as fact that Plaintiff's disabling PTSD is causally related to the mental trauma she suffered due to the armed robbery while at work on August 28, 2007. As a direct and natural consequence of her PTSD, Plaintiff fractured her right ankle on October 5, 2007 while attempting to flee to safety when she believed she saw the assailant who robbed and threatened to kill her. Thus, Plaintiff's October 5, 2007 right ankle fracture is causally related to her August 28, 2007 work injury, and is also compensable.
21. The greater weight of the evidence establishes that Plaintiff is incapable of working due to her compensable injury. Dr. Clay and PA Biehl wrote Plaintiff out of work due to her mental trauma resulting in PTSD and Dr. Shelton did not subsequently return her to work. As a result of Plaintiff's August 28, 2007 injury, she continues to be temporarily and totally disabled from any type of employment.
22. Plaintiff is not at maximum medical improvement and requires further medical and psychiatric treatment in order to effect a cure, to provide relief, and/or to lessen her period of disability.
23. Dr. Shelton is authorized to provide psychiatric treatment to Plaintiff.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: *Page 8 
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable, traumatic mental injury by accident arising out of and in the course and scope of her employment with Defendant-Employer as a result of being robbed on August 28, 2007. As a result of Plaintiff's mental trauma due to her injury by accident, she suffers from PTSD. N.C. Gen. Stat. § 97-2(6) (2007).
2. "`The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury.'" Starr v. Charlotte Paper Co., 8 N.C. App. 604, 612,175 S.E.2d 342, 347 (1970), quoting, Larson's Workmen's CompensationLaw, § 13.11. In the case at bar, Plaintiff fractured her right ankle on October 5, 2007 while attempting to flee for her safety when she believed she saw the assailant who robbed her on August 28, 2007. The medical expert testimony of Dr. Shelton, which the Full Commission has found as fact herein, established that Plaintiff's compensable PTSD caused her to panic and run away when she perceived that the person she saw on the street near her was the robber who threatened to kill her. Thus, Plaintiff's October 5, 2007 right ankle fracture, which she sustained while running away is a direct and natural consequence of her August 28, 2007 work injury, and is compensable. N.C. Gen. Stat. § 97-2(6) (2007); Starr, 8 N.C. App. 604, 175 S.E.2d 342 (1970).
3. Plaintiff established by the greater weight of the evidence that as a result of her admittedly compensable injury and the consequences flowing directly from her injury, she is medically disabled under prong one (1) of Russell v. Lowe's Product Distribution. Russell v. Lowe'sProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. As a result of Plaintiff's August 28, 2007 work injury resulting in PTSD and her October 5, 2007 right ankle fracture, she is temporarily and totally disabled from working and is *Page 9 
entitled to indemnity compensation at the rate of $279.25 per week from August 29, 2007 through the present and continuing until further Order of the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-29
(2007).
5. Plaintiff is not at maximum medical improvement and she requires further medical and psychiatric treatment, including, but not limited to further psychiatric treatment for her PTSD by Dr. Shelton, in order to either effect a cure, provide relief, and/or lessen her period of disability. N.C. Gen. Stat. § 97-25 (2007).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $279.25 per week from August 29, 2007 through the present and continuing until further Order of the North Carolina Industrial Commission. Defendants are given a credit for the temporary total disability compensation already paid to Plaintiff.
2. Defendants shall pay all medical/psychiatric expenses incurred or to be incurred by Plaintiff as a result of her August 28, 2007 work injury and October 5, 2007 right ankle fracture, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen her period of disability. Payments shall be made in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent is hereby approved for Plaintiff's counsel from the sums due Plaintiff under paragraph one (1), above. Defendants shall deduct *Page 10 
and pay directly to Plaintiff's counsel 25 percent of any accrued compensation owed and thereafter, every fourth (4th) check from future compensation due Plaintiff.
4. Defendants shall pay the costs of these proceedings.
This the __ day of March 2009.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG CHAIR
 S/_______________ LAURA KRANIFELD MAVRETIC COMMISSIONER